UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

Proffe Publishing, Inc.

    v.                                         Civil No. 16-cv-93-JL
                                                Opinion No. 2016 DNH 211
Wolfgang Lindner, et al.


**MEMORANDUM ORDER**

This case concerns a contract dispute between plaintiff
Proffe Publishing, Inc. (PPI), a financial newsletter publisher,
and defendant Wolfgang Lindner, whom PPI hired as its assistant
editor in 2011.  PPI alleges that Lindner, once ensconced in his
new position, executed contracts that purported to serve PPI but
which, in reality, improperly enriched Lindner and various
associates.  PPI has sued Lindner, two German-based companies
Lindner allegedly controls, x-services, UG and J.L. Consult,
GmbH, and two of Lindner's hires, Peter Kunze and Egbert Woelk.
Alleging diversity jurisdiction, 28 U.S.C. § 1332, Proffe asserts
six causes of action:  1) conversion (against Lindner); 2)
fraudulent concealment (against all defendants); 3) breach of
fiduciary duty (against Lindner, Kunze and Woelk); 4) civil
conspiracy (against all defendants); 5) breach of the covenant of
good faith and fair dealing (against all defendants); and 6)
breach of contract (against all defendants).  The defendants have
moved to dismiss the case in its entirety, arguing:  that this

court lacks subject matter jurisdiction to hear the case due to a contractual forum selection clause; that the plaintiff's claims are barred by New Hampshire's three-year statute of limitations; and that all of plaintiff's claims fail to state a claim for which relief can be granted.  See Fed. R. Civ. P. 12(b)(1), (6). The court has reviewed the parties' submissions, and heard their oral arguments.  As a general matter, the parties' disagreement over which of several disputed contracts control this litigation makes resolution of the case on a motion to dismiss difficult. More specifically, the court finds that neither of the potentially operative forum selection clauses are mandatory and that the Complaint sufficiently alleges both monetary damages that exceed the jurisdictional threshhold and facts that support each cause of action.  Finally, because the defendants' statute of limitations defense targets plaintiff's claimed damages, rather than its asserted causes of action, the court need not resolve that issue at this early stage of litigation. Accordingly, defendants' motion is denied.

## I.  **Background**

The court culls the following facts from plaintiff's first amended Complaint and from information contained in documents on which the complaint relies.  Haley v. City of Bos., 657 F.3d 39, 46 (1st Cir. 2011).

2

PPI publishes several weekly financial newsletters.  One
such newsletter is *Proffe's Trend Portfolio*, of which Michael
Proffe is editor-in-chief.  Defendant Lindner holds 15% of PPI's
stock and served as a director.[1]  In December 2011, PPI
contracted with Lindner to pay him 5000 euros per month to serve
as *Trend Portfolio's* assistant editor.  Lindner's
responsibilities included submitting weekly market reports to
Michael Proffe concerning PPI's own investments.  Although
Lindner never returned a signed copy of the contract with PPI,
the parties acted in accordance with its terms until May 2015.

In November 2015, PPI and defendant x-services agreed to an
oral contract, pursuant to which x-services would provide PPI
with information technology, administration, bookkeeping and
customer relations services for a fee of 4500 euros per month.
PPI alleges that Lindner is the sole member of x-services.  Both
Lindner and x-services were required to submit monthly invoices
as a prerequisite to payment.  Lindner's role gave him access to
PPI's financial accounts and information technology systems.

In August 2013, Lindner retained defendant Kunze, a friend
with software (but no management) experience, to act as CEO of

---

[1] The date Lindner became a director is unclear.  His
directorship was terminated in January 2016.

PPI and assume some of Lindner's responsibilities.  Kunze was to be paid $3000 per month.  Lindner's fee remained unchanged.

In May 2015, Proffe met with Lindner, Kunze and PPI's accountants to address Proffe's concerns that Lindner wasn't performing his contractual obligations and that neither Lindner nor Kunze were properly submitting documentation of PPI's revenues and accounting.  In particular, Kunze authorized Lindner to be paid for providing services as a vendor even though Lindner hadn't submitted invoices.  The failure to document expenses prevented PPI's accountants from generating balance sheets or profit and loss statements.  PPI subsequently discovered that these failures concealed numerous payments to Lindner or entities he controlled (defendants x-services and J.L. Consult) totalling $82,000 more than what they were due under their agreements with PPI.

As a result of the May 2015 meeting, Lindner and Kunze provided assurances that the Lindner-controlled entities would not be paid without first submitting invoices.  In addition, they assured Proffe and the PPI accountants that they would timely provide revenue information, bank and credit card statements and vendors' invoices so that accurate financial information could be made available to PPI management.

4

Proffe also agreed –- on behalf of PPI –- to Lindner's request to modify Lindner's independent contractor agreement. The new agreement provided that J.L. Consult would assume Lindner's obligations under the 2011 contract, and increased the monthly fee for vendor services from 5,000 to 7,000 euros. Proffe signed the new contract on behalf of PPI and delivered it to Lindner.  As with the earlier contract, Lindner did not return a signed copy.  Nevertheless, PPI and Mr. Lindner acted according to its terms for about six months.

Roughly six weeks after his May 2015 meeting with Proffe, Lindner and the accountants, Kunze resigned from PPI citing a conflict of interest.  Nevertheless, in August 2015 Kunze signed an agreement, in his role as CEO of PPI, to retain defendant Woelk as an independent contractor to take over Kunze's responsibilities under his vendor agreement with PPI.[2]  Woelk was paid $3,000 per month to work 4 hours per week under the August 2015 agreement.

Proffe first suspected during October 2015 that something was awry at PPI when an x-service employee resigned and informed Proffe that Lindner was engaging in questionable business and

---

[2]Plaintiff alleges on information and belief that Woelk's principal occupation is to provide technology consultant services to chemical vapor deposition users and equipment makers.  Thus, PPI avers, it is doubtful that Woelk has any meaningful experience as a business manager.

accounting practices.  Upon further examination, Proffe
discovered that neither Lindner nor Kunze provided PPI's
accountants with any financial information after June 30, 2015,
and that J.L. Consult and  x-services continued to receive
payments without first submitting invoices.  Additionally, Proffe
discovered that Lindner, Kunze and Woelk had concealed the
unauthorized payments to Lindner, J.L. Consult and x-services in
amounts totaling at least $82,000, and that x-services failed to
maintain software systems and provide accountants with financial
information, in contravention of its agreement with PPI.
Lindner, Kunze and Woelk concealed the unauthorized payments by
limiting the paper trail.  One method they employed was to list
PPI's accounts payable in lump sums by aggregating multiple
vendors in a single ledger entry, thus hindering the discovery of
improper payments.  In addition, while bank statements revealed
the precise amounts paid to vendors, only Lindner, Kunze and
Woelk had access to them.

On November 21, 2015, Proffe ordered the suspension of
payments to J.L. Consult and x-services until Lindner provided a
satisfactory explanation for these vendors' failure to submit
invoices before being paid and for the failure to provide PPI's
accountants with the financial information promised at the May
2015 meeting.  Proffe gave Lindner a December 10, 2015 deadline

to comply. Lindner did not meet the deadline, and on December 18, 2015, made arrangements for PPI to pay x-services 6,250 euros despite Proffe's order to suspend payments to it. Lindner proceeded to make it difficult, if not impossible, for PPI to operate without his direct involvement. He blocked Proffe's access to PPI bank accounts and refused to turn over corporate documentation, passwords for servers and firewalls, and information to access PPI's account with its internet service provider. PPI spent a substantial amount of time and money retaking control of its accounts. On January 17, 2016, Lindner accessed the PPI accountants' servers and downloaded all of PPI's bookkeeping information. He also accessed PPI's accounts at a financial institution at around the same time.

In January 2016, PPI shareholders holding 85% of PPI's stock voted to remove Lindner as a PPI director and to terminate PPI's agreements with Lindner, J.L. Consult and x-services effective January 18, 2016. These shareholders also resolved to initiate legal action against Lindner to recover PPI's property. At around the same time, PPI terminated Woelk's vendor agreement and demanded that he return all PPI property. A few weeks later, Woelk turned over some of PPI's property in a meeting with Proffe. PPI alleges on information and belief that Woelk failed to bring with him several binders of financial information that

PPI needed to file its tax returns.  Consequently, PPI was forced to incur the expense of recreating its 2015 financial records.

At the same time, Woelk also delivered to Proffe papers that purported to be PPI contracts[3] with J.L. Consult and x-services bearing dates of May 20, 2015, and signatures by Lindner and Kunze ("the Woelk contracts").  PPI argues that these purported contracts are invalid because Proffe neither approved of nor signed them, and did not even know about them until February 1, 2016.  The Woelk contracts differ from the revised contracts bearing Proffe's signature in ways that are disadvantageous to PPI but highly favorable to J.L. Consult and indirectly to Lindner.  For example, the contract increases the fees to be paid to J.L. Consult while reducing its obligations to PPI.  In addition, the J.L. Consult contract was backdated to 2010, contained no non-compete provision, gave J.L. Consult a unilateral right to increase the fees charged by up to 5% per year and provided J.L. Consult with broad indemnification rights and highly favorable termination rights.

The Complaint alleges that Lindner continues to submit "worthless" copy for weekly newsletters despite PPI's termination of its contracts with J.L. Consult and x-services and denial of

---

[3] Plaintiff refers to these contracts as "The Bogus Contracts."  The court does not adopt that nomenclature, but mentions it only to point out that PPI disputes their validity.

access to records of PPI's investments that form the basis for
the newsletters.  In addition, Lindner continues to send invoices
on behalf of J.L. Consult and x-services in the amounts specified
in the contracts delivered by Woelk.

## II.   Applicable legal standard

To survive a motion to dismiss under Rule 12(b)(6), the
plaintiff must state a claim to relief by pleading "factual
content that allows the court to draw the reasonable inference
that the defendant is liable for the misconduct alleged."
Martinez v. Petrenko, 792 F.3d 173, 179 (1st Cir. 2015) (quoting
Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).  In ruling on such
a motion, the court accepts as true all well-pleaded facts set
forth in the complaint and draws all reasonable inferences in the
plaintiff's favor.  See, e.g., Martino v. Forward Air, Inc., 609
F.3d 1, 2 (1st Cir. 2010).  The court "may consider not only the
complaint but also facts extractable from documentation annexed
to or incorporated by reference in the complaint and matters
susceptible to judicial notice."  Rederford v. U.S. Airways,
Inc., 589 F.3d 30, 35 (1st Cir. 2009) (internal quotations
omitted).

III. **Legal Analysis**

A.  Forum selection clause

Before turning to plaintiff's substantive claims, the court first addresses the defendants' argument that the court lacks subject matter jurisdiction as a result of forum selection clauses in the Woelk contracts, which state that both parties (PPI and J.L. Consult) "consent to the personal jurisdiction of the courts in Rostock, Mecklenburg-Vorpommem, Germany."  The court declines to dismiss the case on these grounds.

Initially, the court notes that the First Circuit Court of Appeals treats a motion to dismiss based on a forum-selection clause as one alleging failure to state a claim under Fed. R. Civ. P. 12(b)(6). Silva v. Encyclopedia Britannica, Inc. 239 F.3d 385, 387-88 (1st Cir. 2001).  The Complaint highlights a dispute as to whether the Woelk contracts are valid.  That is not an issue that can be resolved in the present procedural posture -- a motion to dismiss under Rule 12(b)(6).  Moreover, even if the Woelk contracts are the operative ones, the above forum clause appears to be permissive rather than mandatory, and thus does not deprive this court of jurisdiction.  As the Court of Appeals has observed, "[p]ermissive forum selection clauses, often described as 'consent to jurisdiction' clauses, authorize jurisdiction and venue in a designated forum, but do not prohibit

litigation elsewhere . . . In contrast, mandatory forum selection clauses contain clear language indicating that jurisdiction and venue are appropriate exclusively in the designated forum." Rivera v. Centro Medico de Turabo, 575 F.3d 10, 17 (1st Cir 2009) (quoting 14D Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3803.1 (3d ed. 1998) (emphasis added)).  The clause presented here is such a "consent" clause because it lacks any mandatory language and invokes the parties' "consent."  The court therefore finds that, even if operable, the clause is permissive, rather than mandatory.

The defendants' fallback forum selection position is that a clause in the December 2011 PPI-Lindner and PPI-J.L. Consult contracts (the contracts that plaintiff claims are the operative agreements) also contain a forum selection clause which prevents this court from hearing the case.  The court disagrees.  The clause in the original contracts states that "Nashua (NH) will be the court of jurisdiction for this contractual agreement."[4]  While there are state courts in Nashua, N.H. -- Circuit and Superior -- the lack of specificity as to which court is the subject of the clause, as well as the fact that this court has jurisdiction over cases originating in Nashua, N.H., counsels against a conclusive finding at this stage

---

[4] Complaint, Exh. 1, 2 (doc. nos. 1-1 and 1-2).

11

of the litigation.  Moreover the court is not convinced that the language used is that of a mandatory clause.  See, e.g. Arguss Comm. Group, Inc. v. Teletron, Inc., No. 99-257-JD, 2000 WL 36936 at *7, n.8 (D.N.H. Nov. 19, 1999) ("when only jurisdiction is specified the clause will generally not be enforced without some further language indicating the parties intent to make jurisdiction exclusive" quoting Docksider, Ltd. V. Sea Tech., Ltd. 875 F.2d 762, 764 (9th Cir. 1989)) (and cases cited therein).

Based on the foregoing, the court declines to dismiss the case based on either of the forum selection clauses that may be at issue.

B.  Amount in controversy

The defendants also claim that the court lacks subject matter jurisdiction over this case because the plaintiff has failed to satisfy the amount in controversy requirement of 28 U.S.C. § 1332, which provides that "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs . . . ."  Ordinarily, "the sum claimed by the plaintiff controls if the claim is apparently made in good faith. St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 288-89 (1938).  If the opposing party challenges the jurisdictional

amount, then the plaintiff must demonstrate "that it is not a legal certainty that the claim involves less than the jurisdictional amount." Stewart v. Tupperware Corp., 356 F.3d 335, 338 (1st Cir. 2004). Plaintiff alleges two categories of damages:  1) $82,000 converted by Lindner[5]; and 2) the $100,000 cost to repair the damage caused by the defendants.[5]  Either alone or taken together, the damage allegations satisfy the plaintiff's obligation to demonstrate the lack of a legal certainty that its damages fall below the jurisdictional threshhold.  While the defendants forcefully argue that neither amount is legally or factually supportable, these arguments do not defeat the plaintiff's showing.  As such, the court finds that the plaintiff satisfies the jurisdictional amount in controversy requirement.

---

[5] Complaint (doc. no. 1) at § 18.

[5] Complaint (doc. no. 1) at §§ 18, 38.

13

C.  Statute of limitations[6]

Defendants next argue that New Hampshire's three-year statute of limitations excludes any damage that accrued prior to March 14, 2013.  See N.H. Rev. Stat. Ann. § 508:4, I.  At oral argument, however, defense counsel indicated that this defense is focused on limiting plaintiff's damages to those occurring only within the three years immediately prior to this lawsuit, rather than striking claims from the suit.  The court declines to address this issue in the context of a motion to dismiss.

D.  Count 1 - Conversion[7]

Delaware law defines conversion as "any distinct act of dominion wrongfully exerted over the property of another, in denial of [the plaintiff's] right, or inconsistent with it." Kuroda v. SPJS Holdings, L.L.C., 971 A.2d 872, 888 (Del. Ch. 2009) (quoting Drug, Inc. v. Hunt, 168 A. 87, 93 (Del. 1933). PPI alleges that Lindner and the companies he controlled engaged

---

    [6] The parties apply New Hampshire law to the statute of limitations issue, and the court does as well.  This is likely the correct approach, as PPI's principal place of business is in New Hampshire.  See Klaxon v Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941) (holding that federal court sitting in diversity applies forum state's choice of law rules); Waterfield v. Meredith Corp., 161 N.H. 707, 710 (2011) (observing that New Hampshire applies its own statute of limitations "in any case in which either party is a New Hampshire resident or the cause of action arose in this State.").

    [7] The parties apply Delaware law to the substantive claims. The court will follow suit.

in a scheme to misappropriate money to which they were not
entitled from PPI.  Defendants originally argued that the
Complaint does not allege that Lindner personally benefitted from
the contracts.  They also argue that Lindner, as a PPI officer
and director, had the authority to enter into contracts with x-
services and J.L. Consult.  Therefore, they assert, a clause in
PPI's Articles of Incorporation exculpates him and no cause of
action can lie.  As to the first argument, the defendants
conceded at oral argument that a conversion can occur even if the
defendant does not personally enrich himself.  Regardless, since
Lindner was allegedly the sole member of the LLCs with whom he
contracted, the Complaint sufficiently "allows the court to draw
the reasonable inference" that he benefitted personally.
Martino, 609 F.3d at 2.  Moreover, whether, as Lindner argues,
PPI's Articles of Incorporation shield him from liability depends
on a question that cannot be answered at this stage of the
litigation –- whether he acted in bad faith, in breach of his
duty of loyalty, in his self-interest, or engaged in intentional
misconduct.  In re Cornerstone Therapeutics Stockholders Litig.,
115 A.3d 1173, 1179-80 (Del. Ch. 2014) ("When a director is
protected by an exculpatory charter provision, a plaintiff can
survive a motion to dismiss by that director defendant by
pleading facts supporting a rational inference that the director

15

harbored self-interest adverse to the stockholders' interests, acted to advance the self-interest of an interested party from whom they could not be presumed to act independently, or acted in bad faith.").

Finally, the defendants' argument that this claim is more properly brought as one for breach of a fiduciary duty of loyalty and is therefore duplicative of Count 3 misses the mark because plaintiffs are permitted to plead alternative theories. Fed. R. Civ. P. 8(d)(2). The motion to dismiss is denied as to Count 1.

E.   Count 2 – Fraudulent concealment

Proof of fraudulent concealment under Delaware law requires: 1) deliberate concealment by the defendant of a material past or present fact, or silence in the face of a duty to speak; 2) that the defendant acted with scienter; 3) an intent to induce the plaintiff's reliance upon the concealment; 4) causation; and 5) damages resulting from the concealment. Nicolet, Inc. v. Nutt, 525 A.2d 146, 149 (Del. 1987). Defendants argue that this count should be dismissed as to all defendants except Lindner because the Complaint fails to specifically allege that x-service, J.L. Consult, Kunze or Woelk took any affirmative action to defraud PPI. As to x-service and J.L. Consult, the court finds that the Complaint quite adequately alleges facts that the two Lindner-controlled entities concealed facts regarding allegedly improper

payments to Lindner and to the entities from both PPI and its accountants.

As to Woelk and Kunze, the argument that, "from their perspective," they were continuing under an oral agreement[8] is insufficient to support dismissal at this stage, where the plaintiff alleges that, as Chief Operating Officers, they failed to disclose that Lindner and his companies were not submitting invoices even though they were being paid.  In addition, the Complaint explicitly alleges that Kunze reneged on his May 2015 promise not to pay Lindner in the absence of invoices.  As for Woelk, the Complaint alleges that he assumed Kunze's responsibilities in August 2015 and that payments to Lindner continued after Proffe ordered them suspended.  Finally, it was Woelk that delivered the contracts that PPI claims are fraudulent in February 2016.  Whether they ultimately prove to be legitimate, as the defendants claim, is not the issue presently before the court.  The allegations in the complaint are sufficient to state a claim for fraudulent concealment against all defendants.

---

[8] Memorandum of Law (doc. no. 21-1) at 8.

F.   Count 3 – Breach of Fiduciary Duty

A claim for breach of fiduciary duty under Delaware law has two elements:  1) that a fiduciary duty existed and 2) that the defendant breached that duty.  Beard Research v. Kates, 8 A.3d 573, 601 (Del. Ch. 2010).  Directors, or others with high-ranking corporate positions "unquestionably owe fiduciary duties" to the corporation.  Id. at 601.  Thus, the remaining question is whether the Complaint sufficiently alleges that Lindner, Kunze or Woelk breached their duties of loyalty and care to PPI.  In re Rural Metro Corp., 88 A.3d 54, 81 (Del. Ch. 2014).  The court finds that it does, as the allegations that Kunze and Woelk improperly paid the Lindner companies or failed to report their lack of invoices could be a breach.  To the extent that the defendants rely on the business judgment rule, an exculpatory clause in PPI's Articles of Incorporation, or 8 Del. C. § 102(b)(7)[9] to insulate Woelk and Kunze from liability, those

---

[9] As relevant here, 8 Del. C. § 102(b)(7) provides that an entity's articles of incorporation may contain:

A provision eliminating or limiting the personal liability of a director to the corporation or its stockholders for monetary damages for breach of fiduciary duty as a director, provided that such provision shall not eliminate or limit the liability of a director:  (i) For any breach of the director's duty of loyalty to the corporation or its stockholders; (ii) for acts or omissions not in good faith or which involve intentional misconduct or a knowing violation

18

defenses are dependent on facts more appropriately presented under Rule 56 (motion for summary judgment) or Rule 50 (motion for judgment as a matter of law).  See supra, pp. 14-15.  The motion to dismiss Count 3 is denied.

G.   Count 4 – Conspiracy

     Under Delaware law, the elements of a civil conspiracy are: 1) a confederation or combination of two or more persons; 2) an unlawful act done in furtherance of the conspiracy; and 3) actual damage.  AeroGlobal Capital Mgmnt., LLC v. Cirrus Industries, Inc., 871 A.2d 428, 437 n.8 (Del. 2005).  Defendants argue that the Complaint fails to set forth facts in support of the second and third elements because, it argues, the only contracts that were signed by the Lindner-controlled companies and PPI permitted the payments that are the subject of this lawsuit.  But, as previously noted, the legitimacy and applicability of those contracts is in dispute, and thus they cannot be the basis of dismissal.  Woelk argues that his failure to return PPI records "was not unlawful."  However, as the plaintiff points out, the records unquestionably belonged to PPI, not Woelk.  At this stage

---

          of law; . . . or (iv) for any transaction from which the
          director derived an improper personal benefit.

of the proceedings that allegation is sufficient to proceed.  The motion to dismiss Count 4 is denied.[10]

G.   Counts 5 and 6 – Breach of contract and of the covenant of good faith and fair dealing[11]

The court addresses these two counts in reverse order. Resolution of the breach of contract count requires resolution of the dispute as to which contracts are operative.  The defendants' motion is premised on the assertion that the 2015 contracts are the only ones in play.  As previously noted, the Complaint alleges otherwise.  Defendants also allege that Lindner would have complied with his obligations but for PPI's anticipatory breach.  At a minimum, this suggests that he did not fulfill his obligations.  Whether he was justified in doing so is not fodder for Rule 12(b)(6) because of the court's obligation to "accept[] as true all well-pleaded facts set forth in the complaint and draw[] all reasonable inferences in the plaintiff's favor." Martino, 609 F.3d at 2.  More generally, defendants' broad-brush argument that the Complaint lacks any indication of what the defendants were supposed to do and what they did falls short. The complaint sufficiently alleges that each defendant took

---

[10] Defendants' motion makes no specific argument as to Kunze in the context of Count 4.

[11] Because the parties briefed these two causes of action together, the court addresses them in one section.

actions that were at least inconsistent with, and at most, outright violated, the agreements that PPI alleges were in place. Whether PPI's allegations withstand scrutiny is a question for another day in another procedural posture.

As to Count 5, the covenant of good faith and fair dealing under Delaware law is "best understood as a way of implying terms in the agreement, whether employed to analyze unanticipated developments or to fill gaps in the contract's provisions." Dunlap v. State Farm Fire and Cas. Co., 878 A.2d 434, 441 (Del. 2005). Existing contract terms control, however, such that implied good faith cannot be used to circumvent the parties' bargain, or to create a "free-floating duty . . . unattached to the underlying legal document." Id. (citations omitted). Thus, one generally cannot base a claim for breach of the implied covenant on conduct authorized by the terms of the agreement. Id.

Defendants argue simply that the Complaint lacks specific allegations of any breach of an implied obligation. The court disagrees. The allegations that defendants engaged in transactions that benefitted themselves, but were hidden from, or in contravention of directions from, PPI are sufficient to allow the case to proceed.

21

## IV.  <u>Conclusion</u>

The defendants' forum selection clause and amount-in-controversy arguments fail, and they largely withdrew their damages based statute of limitations arguments.  Their substantive arguments are inappropriate for disposition under Rule 12, and will be better suited under Rule 56 or at trial. Defendant's motion to dismiss[12] is therefore DENIED.

**SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge

Dated: November 22, 2016

cc:  David K. Pinsonneault, Esq.
     Jeremy David Eggleton, Esq.

---

[12] Doc. no. 21.